IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS PANTANO, as Independent Administrator of the Estate of Marie Sasso, Deceased, as of Co-Trustee of the Marie M. Sasso Trust dated August 15, 2001, AS Restated on October 21, 2005, and MICHAEL MANNO, as Co-Trustee of the Marie M. Sasso Trusted dated August 15, 2001, and Restated on October 21, 2005, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | No. 12 C 3951 |
| v. | ) ) | Judge Robert W. Gettleman |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity as deposit insurer of First Chicago Bank & Trust, f/k/a LABE BANK, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In a Second Amended Complaint, plaintiffs Dennis Pantano, as Independent Administrator of the Estate of Marie M. Sasso, deceased, and as Co-Trustee of Marie M. Sasso Trust (the "Trust"), and Michael Manno as Co-Trustee of the Trust, seek review of the denial by defendant Federal Deposit Insurance Corporation in its corporate capacity ("FDIC-C") of plaintiffs' claim for deposit insurance on accounts maintained in a failed financial institution. The parties agree that the operative material facts are not in dispute and have filed a joint statement of facts and cross-motions for summary judgment. Because the FDIC-C's decision was not arbitrary or capricious, the court grants its motion for summary judgment and denies plaintiffs' motion for summary judgment.

## BACKGROUND

On August 15, 2001, Marie M. Sasso executed the Trust, which was restated on October 21, 2005. Marie was the sole trustee until her death on September 10, 2008. As trustee Marie maintained certain bank accounts including Account No. 1889 at First Chicago Bank and Trust (the "Account"). The Account was designated in the name of Marie M. Sasso as Trustee of the Marie M. Sasso Trust.

On September 19, 2008, nine days after Marie's death, a transfer from another trust account was made in the amount of $16,246 into the Account. On October 6, 2008, a second deposit for in the amount of $59,590.32 from another trust account was made into the Account.

After Marie's death on September 10, 2008, checks totaling $89,524.04 were made payable to Gary Sasso or for his benefit bearing the signature of Marie M. Sasso and drawn on an account at First Chicago in the name of the Trust. Gary Sasso is Marie's son and beneficiary of the Trust. The checks were all presented for payment after Marie's death and honored by First Chicago.

On September 24, 2008, the balance of the account was $21,556.47. On October 24, 2008, the balance of the Account was $901.36, and on November 25, 2008, the balance on the Account was $823.36.

On January 5, 2009, Gary Sasso filed a petition for probate of Marie's estate in the Circuit Court of Cook County, Illinois (the "probate proceedings"). Letters of Office were issued to Gary eleven days later.

Gary was removed as the Independent Representative of the Estate on August 31, 2009, because he had obtained the Letters of Office under false pretenses due to a previous conviction for felony forgery. Plaintiff Pantano was appointed the Independent Representative.

On July 23, 2010, plaintiffs initiated supplemental proceedings in the probate court to recover from First Chicago the amount of $89,524.04 for allegedly unauthorized and improper withdrawals, check payments, and charges made against the Trust Accounts after Marie's death. One year later, on July 8, 2011, the Illinois Department of Financial and Professional Regulation closed First Chicago and appointed the FDIC as Receiver. As a result of the closure, the supplemental proceedings in the probate court were dismissed.

After the closure, plaintiffs submitted a claim for deposit insurance to FDIC-C, seeking the $89,524.04 representing the withdrawals from the Trust Accounts after Marie's death. To support their claim, plaintiffs submitted bank statements for the Account for the periods of September 25, 2008, through November 25, 2008. Plaintiffs also submitted copies of a number of checks written on the Account that were dated and paid after Marie's death:

> (1) Check No. 336 in the amount of $14,300 dated July 22, 2008, payable to Gary Sasso, presented and paid on September 29, 2008;
>
> (2) Check No. 338 in the amount of $9,174.35 dated July 22, 2008, payable to Illinois State Disbursement Unit, presented and paid on September 23, 2008;
>
> (3) Check No. 361 in the amount of $78 dated October 7, 2008, payable to the Illinois Secretary of State, presented on and paid on October 29, 2008;
>
> (4) Check No. 362 in the amount of $826.68, dated October 7, 2008, payable to Cook County Treasurer, presented and paid on October 14, 2008;
>
> (5) Check No. 363 in the amount of $145.01, dated October 7, 2008, payable to Comcast, presented and paid on October 16, 2008; and

(6) Check No. 364 in the amount of $65,000, dated June 22, 2008, payable to Gary Sasso, presented and paid on October 17, 2008.

In addition to the checks, plaintiffs submitted to FDIC-C an affidavit of forgery with supporting exhibits from Forensic Document Examiner Ellen Mulcrone Schuetzner, an affidavit of forgery from plaintiff Pantano, a copy Chicago Police Department Case Incident Report RD #HV579902, a copy of plaintiffs' amended verified petition in the probate proceeding against First Chicago and others, and a copy of a May 18, 2011, judgment order entered by the probate court in favor of plaintiffs and against Gary Sasso in the amount of $271,299.25.

The FDIC-C disallowed plaintiffs' claim on February 13, 2013, determining that on July 8, 2011, the date FDIC was appointed receiver of First Chicago, Marie Sasso had one account titled Marie M. Sasso Trustee, Marie M. Sasso Trust DTD October 21, 2005. That account had a balance of $513.36 at the time of the failure of First Chicago, and Marie M. Sasso was the only signatory on the account. That account was subsequently transferred to the Northbrook Bank & Trust Company under a Purchase and Assumption Agreement.

**DISCUSSION**

In this action, plaintiffs claim that FDIC-C should have credited the Account with the $89,524.04 of improper and unauthorized debits from the Account for the purposes of calculating the proper amount of deposit insurance. As the parties agree, deposit insurance determinations are reviewable under the Administrative Procedure Act, 5 U.S.C. § 706. The FDIC-C's decision must be affirmed unless it is "found to arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); Nimon v. Resolution Trust Corp., 975 F.2d 240, 244 (5th Cir. 1992). As noted by the court in Clancey v. Office of Foreign Assets Control, 559 F.3d 595, 599 (7th Cir. 2009)(internal citations omitted):

> [The court's] inquiry is searching and careful but the ultimate standard of review is a narrow one. We must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment but we may not substitute our judgment for that of the agency.

Review under this standard is highly deferential to the agency's determination. <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971). In conducting this review the court must consider whether the agency followed its governing regulations, according "a great deal of deference to the FDIC's interpretation of what these regulations do and do not include within their definition of deposit." <u>Raine v. Reed</u>, 14 F.3d 280, 283 (5th Cir. 1994)(<u>quoting</u> <u>Federal Deposit Ins. Corp. v. Philadelphia Gear Corp.</u>, 476 U.S. 426, 438 (1986).

When a bank fails and is closed, FDIC-C determines the existence of an insured deposit based on the circumstances at the time of the bank's closing. That determination is governed by 12 C.F.R. § 330.3(i)(1), which provides that "the amount of a deposit is the balance of principal and interest unconditionally credited to the deposit account as of the date of default of the insured depository institution . . .." Thus, as FDIC-C argues, the depositor relationship depends on the deposit shown in the bank's books and records at that time. <u>Raine</u>, 14 F.3d at 283-84; <u>In re Collins Securities Corp. v. FDIC</u>, 998 F.2d 551, 554-55 (8th Cir. 1993).

In the instant case, there is no dispute that the $89,524.03 in disputed funds were "simply not unconditionally credited" to the Account at the time First Chicago closed, leading FDIC-C to determine that the funds were not covered by deposit insurance. Despite these undisputed facts, plaintiffs argue that the disputed funds should be considered a "deposit" because First Chicago, before it failed, improperly paid the checks upon presentment, and then refused to credit the Account when informed of its error. According to plaintiffs, the documents presented to the FDIC constitute "deposit records" under 12 C.F.R. § 330.3(h). Those records, according to

5

plaintiffs, demonstrate that bank employees were negligent in paying the checks and FDIC is mistaken in claiming that plaintiffs can rely on the bank's records alone. To support this argument, plaintiffs cite to an FDIC advisory opinion dated August 8, 1991, from Roger Hood, Assistant General Counsel, entitled "Handling of Claims Where Depositor Alleges that Balance of Account is Less Than it Should Be Due to Negligence or Willful Wrongdoing of Employee of Insured Depository Institution." In that opinion, Hood states:

> Where there is convincing evidence that, due to the negligence or willful wrongdoing of an employee of the failed insured institution, a depositor's account balance, as shown on the institution's records, as less than it should be, then the precepts of equity require, I think, that the depositor should be permitted to include the amount of the deficiency in a claim for deposit insurance.

As FDIC-C notes, plaintiffs' reliance on the advisory letter is misplaced. First, plaintiffs have not directed the court to a single case that has cited, let alone relied on, the letter to conclude that the FDIC-C's reliance on the bank records at the time of its closing is arbitrary or capricious. For good reason. The opinion was prepared by an FDIC attorney in response to a specific inquiry and indicates that "our comments reflect an FDIC point of view and are offered for informational purposes only."

Moreover, as FDIC-C points out, the advisory opinion addresses only the situation in which there is "convincing evidence" that the account is less than it should be due to the negligence or willful wrongdoing of an employee of a failed institution." In the instant case, the alleged under balance is due to Gary Sasso's forgeries. There is no evidence to suggest that a First Chicago employee acted negligently or engaged in wilful wrongdoing. In a very similar case the Fifth Circuit rejected the notion, advanced by the instant plaintiffs, that a depositor should not be precluded from coverage by federal deposit insurance because of an error by the

bank. The court noted that the fact that FDIC must "make determinations of deposit insurance coverage overnight when it decides to enter into a Purchase and Assumption Transaction," justifies rules that allow it to rely upon the failed institution's books and records." Raine, 14 F.3d at 283. The reason is obvious. "Deposit insurance protects depositors from loss due to the bank's insolvency, not loss from the bank's pre-insolvency mistakes." In re Collins Securities Corp., 998 F.2d at 554-55.

Even when the bank has committed a mistake, courts have thus refused to alter the requirement that deposits be on the books of the insolvent bank to be covered by deposit insurance. Nimon, 975 F.2d at 246. "Deposit insurance simply does not cover losses such as those claimed by Plaintiffs here, which relate to pre-insolvency actions of the failed bank." Beck Bus. Center Inc. v. Michigan Heritage Bank, 2010 WL 3075080 *5 (E.D. Mich. 2010). As the Raine court stated, "[t]he regulations are clear and simple, either the amount is credited to the account, in which case it is covered by deposit insurance, or the amount is not on the books, in which case it becomes a general liability of the bank." Raine, 14 F.3d at 284. In the instant case, the amount was not credited to the Account and is not covered by deposit insurance. Consequently, defendant is entitled to summary judgment.

## CONCLUSION

For the reasons described above, plaintiffs' motion for summary judgment (Doc. 33) is denied and defendant's motion for summary judgment (Doc. 35) is granted.

**ENTER:** February 7, 2014

**Robert W. Gettleman**
**United States District Judge**